**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tamara Demia Jones, | ) CIV 15-02528-PHX-MHB |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

Pending before the Court is Plaintiff Tamara Demia Jones's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning January 1, 2007 (Transcript of Administrative Record ("Tr.") at 173-74, 185-90.) Her applications were denied initially and on reconsideration. (Tr. at 72-89, 90-106.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 122-23.) A hearing was held on June 16, 2014, (Tr. at 40-72), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 20-39.) The Appeals Council denied Plaintiff's request for review (Tr. at 1-6.), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2007 – the alleged onset date. (Tr. at 25.) At step two, she found that Plaintiff had the following severe impairments: diabetes mellitus; asthma; peripheral neuropathy of lower extremities; mild degenerative disc disease of the cervical spine; mild sclerosis of the lumbar spine; obesity; affective disorder; anxiety disorder and purported dyslexia. (Tr. at 25.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 26.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform less than a full range of sedentary work as defined 20 CFR 404.1567(a) and 416.967(a). The claimant can lift and carry ten pounds occasionally and ten pounds frequently. She can stand and/or walk two hours out of an eight-hour workday. She can sit six hours out of an eight-hour workday. She must use a cane as needed. She can frequently climb stairs, but is precluded from climbing ladders, ropes or scaffolds. She is precluded from balancing. She can frequently stoop and crouch. She is precluded from kneeling and crawling. She is precluded from overhead work with the right upper extremity. She can frequently perform gross manipulation with right upper extremity. She must avoid concentrated exposure to fumes, odors, dust and other pulmonary irritants. She is limited to simple routine tasks and only non-intense interaction with the public and co-workers. She is precluded from jobs requiring teamwork and hypervigilance. She cannot be responsible for

- 3 -

1 the safety of others. She is limited to only low stress jobs, which are defined as having only
2 occasional changes in the work setting and work-related decisions. She is limited to jobs
3 requiring only basic reading levels." (Tr. at 26-27.) The ALJ determined that Plaintiff was
4 unable to perform any past relevant work. (Tr. at 33.) The ALJ concluded that Plaintiff has
5 not been under a disability from January 1, 2007, through the date of her decision. (Tr. at 35.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence; Plaintiff claims that neither (A) the physical RFC[1] nor (B) the mental RFC are supported by substantial evidence.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. Orn v. Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 4 -

1  　　　　If a treating physician's opinion is not contradicted by the opinion of another
2  physician, then the ALJ may discount the treating physician's opinion only for "clear and
3  convincing" reasons.  See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830).  If
4  a treating physician's opinion is contradicted by another physician's opinion, then the ALJ
5  may reject the treating physician's opinion if there are "specific and legitimate reasons that
6  are supported by substantial evidence in the record."  Id. (quoting Lester, 81 F.3d at 830).
7  　　　　Plaintiff contends that the ALJ erred by failing to properly weigh medical source
8  opinion evidence.  Specifically, Plaintiff argues that the ALJ improperly rejected the opinion
9  of treating physician, Edward Sayegh, M.D., relying instead upon the opinions from state
10 agency doctors who completed assessment forms as part of the initial and reconsideration
11 determinations that were based on limited record reviews.
12 　　　　Since the opinion of Dr. Sayegh was contradicted by consultative and reviewing
13 doctors' opinions, as well as other objective medical evidence, the specific and legitimate
14 standard applies.
15 　　　　Historically, the courts have recognized the following as specific, legitimate reasons
16 for disregarding a treating or examining physician's opinion: conflicting medical evidence;
17 the absence of regular medical treatment during the alleged period of disability; the lack of
18 medical support for doctors' reports based substantially on a claimant's subjective complaints
19 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
20 medical evidence.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
21 v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v.
22 Bowen, 885 F.2d 597, 604 (9th Cir. 1989).
23 　　　　The ALJ considered the following objective medical evidence of Plaintiff's
24 impairments in her determination of Plaintiff's RFC assessment.
25 　　　　In November 2012, consultative examiner Angel Gomez, M.D. examined the Plaintiff
26 (Tr. 319-27.) He noted that Plaintiff was obese but overall appeared to perform well. Plaintiff
27 appeared to be slightly weaker in the right upper and right lower extremities. Dr. Gomez
28 diagnosed asthma and diabetic neuropathy. Dr Gomez completed an opinion of Plaintiff's

1  work-related activities in which he opined that Plaintiff could lift or carry 20 pounds
2  occasionally and frequently; stand and walk at least two hours but less than six hours per
3  eight-hour workday; frequently able to kneel, crouch, crawl and feel with the right hand;
4  occasionally stoop, and kneel; no limitations on climbing, reaching, handling and ability to
5  finger. He also noted Plaintiff's minimal to no limp with use of a cane for balance. (Tr. 319-
6  27.)

       Also in November 2012, state agency physician Stephen A. Whaley, M.D., reviewed Plaintiff's medical record and submitted a Physical RFC Assessment form. Dr. Whaley opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours per eight-hour work day; had no limitations pushing or pulling with hands or feet; should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation; and should limit exposure to environmental conditions which exacerbate respiratory symptoms. (Tr. at 81-83.) Furthermore, state agency physician Donald Robins, M.D., also reviewed Plaintiff's medical records. Dr. Robins opined that Plaintiff could lift and carry twenty pounds occasionally and, lift and carry ten pounds frequently; stand and walk about four hours in an eight-hour work day; sit about six hours in an eight-hour workday; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation. (Tr. at 101-03.) Additionally, state agency physician Arvin Klein, M.D., reviewed the claimant's medical records and testified at the hearing. Dr. Klein opined that Plaintiff could lift and carry ten pounds occasionally and, lift and carry ten pounds frequently; can stand and walk up to six hours in an eight-hour workday; can sit up to six hours in an eight-hour workday; is precluded from balancing and climbing ladders, ropes and scaffolds; is precluded from performing overhead reaching the right upper extremity; can frequently perform gross manipulation wight the right upper extremity; and is precluded from working around solvents, fumes, dusts, heights and heavy machinery. (Tr. at 40-72.)

       Lastly, in March 2013, treating physician Edward Sayegh, M.D., submitted a medical source statement regarding Plaintiff's abilities. Dr. Sayegh opined that Plaintiff could sit one

1  hour; stand and walk one hour; lift and carry less than ten pounds; has limitations in doing
2  repetitive reaching, handling and fingering with her right arms, hands and fingers; is limited
3  to less than a full range of sedentary exertion and would miss more than four workdays a
4  month. Dr. Sayegh concluded that Plaintiff was not physically capable of working an eight
5  hour day for five days a week on a sustained basis.  (Tr. at 343-44.)

6         In her evaluation of the objective medical evidence,  the ALJ addressed state agency
7  physician Dr. Gomez's opinion that Plaintiff's ability to finger with her right hand. (Tr. 319-27.) The
8  ALJ gave reduced weight because it was inconsistent with nerve conduction studies showing only
9  mild peripheral neuropathy in upper extremities, as well as Plaintiff's testimony that she has normal
10 use and feeling in her hand. (Tr. at 32.) However, the ALJ gave significant weight to Dr. Gomez's
11 remaining opinion because it is generally consistent with the medical record as a whole. (Tr. at 32);
12 see 20 C.F.R. § 416.927(d)(2)(i) (state agency medical consultants "are highly qualified
13 physicians, psychologists, and other medical specialists who are also experts in Social
14 Security disability evaluation"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The
15 opinions of non treating or non examining physicians may also serve as substantial evidence
16 when the opinions are consistent with independent clinical findings or other evidence in the
17 record." (citations omitted)).

18        The ALJ also considered the opinions from Dr. Whaley and Dr. Robbins. (Tr. at 32.)
19 Dr. Robbins largely agreed with Dr. Whaley's opinion. The ALJ gave reduced weight to their
20 opinions regarding the Plaintiff's ability to work around extreme temperatures and wetness
21 because the Plaintiff's diabetes mellitus is under good control. However, the ALJ gave
22 significant weight to their remaining opinions because they are consistent with Plaintiff's
23 positive response to conservative care and clinical examinations documenting normal gait
24 and good strength.(Tr. at 32.) Additionally, the ALJ gave great weight to Dr. Klein's opinion
25 because it is consistent with the medical record as a whole, including Plaintiff's positive
26 response to conservative care, the mild x-ray studies of her spine, generally mild peripheral
27 neuropathy and clinical examinations documenting normal gait, full range of motion of her
28 right shoulder and occasional right shoulder pain. (Tr. at 33.)

The ALJ then discussed treating physician Dr. Sayegh's opinion that the Plaintiff is limited to less than a full range of sedentary exertion and would miss more than four workdays per month. (Tr. at 32.) The ALJ discounted the opinion because it was overly restrictive given Plaintiff's positive response to conservative treatment and clinical examination documenting mild neuropathic symptoms, normal gait and generally full strength. (Tr. at 32.)

The Court finds that the ALJ properly weighed the medical source opinion evidence related to Plaintiff's physical impairments, and gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. Sayegh's opinion. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record." (citation omitted)). An ALJ provides specific and legitimate reasons to discount a treating physician's opinion when she expressly relies on the contrary opinions of an examining physician. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ gave significant weigh to the majority of Dr. Gomez's opinion that Plaintiff could perform the demands of sedentary work, with certain postural and environmental limitations. (Tr. at 32; 322-24.) The opinion of Dr. Gomez is substantial evidence for the RFC assessment and the rejection of the treating physician's opinion. Id. Furthermore, an ALJ may discount a treating physician's opinion because it is unsupported by treatment notes and conflicts with examination results and Plaintiff's positive response to treatment. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 599, 601-03 (9th Cir. 1999). The ALJ explained with citations to the record that Plaintiff's treatment has been routine, without spinal injections or surgery, that her asthma, diabetes and right shoulder have been controlled with medication, and that objective medical evidence is inconsistent with the treating physicians's assessment of extreme limitations. (Tr. at 31.) An X-ray of Plaintiff's spine shows mild and minimal changes (Tr. at 406-07.) A nerve conduction study showed mild and moderate abnormalities. (Tr. at 395-98.). Dr. Gomez's exam revealed normal muscle tone, full range of motion in all extremitites, slight weakness in the right extremities,

1    full sensory findings, and normal spirometry. (Tr. at 321.) The evidence the ALJ relied upon
2    was substantial, and therefore, the Court finds no error.

3          Plaintiff next contends that the mental RFC is not supported by substantial evidence
4    because the ALJ erred in rejecting the opinion from consultative examiner Robin Potter, Psy.
5    D.

6          In November 2012, Dr. Potter examined Plaintiff. (Tr. at 328-42.) Dr. Potter observed
7    Plaintiff in a depressed manner, and observed that Plaintiff needed reminders to take her
8    medication, needed transportation assistance, and had been in special education in school.
9    Additionally, Dr. Potter noted that Plaintiff was quiet, not a good historian, presented at times
10   as immature by rolling her eyes during the exam, appeared hesitant, and had to reposition and
11   move around during the exam. Dr. Potter found that Plaintiff exhibited symptoms of
12   depression and anxiety. Plaintiff's symptoms of depression included depressed mood most
13   days for several years, hypersomnia, decreased appetite, diminished interest in previously
14   enjoyable activities, and passive suicidal ideation. There was no current suicidal intent or
15   plan. Plaintiff's anxiety symptoms included constant worry and rumination. However,
16   anxiety did not seem to meet criteria for diagnosis based on Plaintiff's reporting. The results
17   of the MMSE revealed no gross cognitive impairments such as delirium or dementia. The
18   results of the WAIS-IV revealed that Plaintiff's overall intelligence quotient is in the
19   extremely low range. Based on Plaintiff's varied level of effort and motivation, Dr. Potter
20   stated that the results should be viewed with caution. Plaintiff did not appear to meet the
21   criteria for Mild Mental Retardation based on her daily living skills. According to Dr. Potter,
22   examination of Plaintiff's previous school records could shed light on whether Plaintiff has
23   exhibited cognitive problems over time. In light of the evidence Dr. Potter concluded that a
24   diagnosis of borderline intellectual functioning appeared appropriate. (Tr. at 328-42.)

25         Dr. Potter also completed a medical assessment of Plaintiff's ability to perform
26   work-related activities. (Tr. at 340-41.) Dr. Potter opined that Plaintiff's difficulty with
27   comprehension and processing speed appeared likely to interfere with Plaintiff's ability to
28   follow instructions in a work environment. Additionally, Plaintiff exhibited issues with

1 sustained concentration and persistence which would likely impact Plaintiff's attention and
2 concentration at work and ability to maintain regular attendance. Furthermore, Plaintiff had
3 limitations with social interaction that would likely interfere in a work like setting. Lastly,
4 Dr. Potter opined Plaintiff's difficulty adapting to changes and difficulty with interpersonal
5 relationships are likely to interfere with her ability to maintain employment. (Tr. at 340-41.)

6 The ALJ discussed Dr. Potter's opinion that Plaintiff would have difficulty following
7 instructions in a work environment; moderate difficulty carrying out even simple
8 instructions; difficulty maintaining attention, concentration and regular attendance at work;
9 would have social functioning limitations of an unspecified degree; and had poor ability to
10 adapt, cope or handle changes. (Tr. at 340-41.) The ALJ gave reduced weight to Dr. Potter's
11 opinion because it was inconsistent with Plaintiff's poor effort during the examination as well
12 as the Plaintiff's general lack of mental health treatment and unremarkable mental status
13 examinations during routine office visits. (Tr. at 33.)

14 The Court having reviewed the ALJ's evaluation of the objective medical evidence
15 finds that the ALJ did not mention the opinions or treatment record of psychological
16 consultants Alvin Smith, Ph. D., and Stephen Fair, Ph. D. (Tr. at 20-39.) Dr. Potter is the only
17 source in the record whose opinion the ALJ discussed or weighed. The ALJ did not discuss
18 or indicate what degree of weight she afforded to the opinions of Dr. Smith (Tr. at 84-85),
19 and Dr. Fair (Tr. at 104-05). Even if the non-examining opinions support the ALJ's decision,
20 the ALJ has not provided any explanation whether the evidence supports those opinions
21 sufficiently for the ALJ to properly rely on them. See Garrison v. Colvin, 795 F.3d 995, 1012
22 (9th Cir. 2014) (noting differences in treatment of opinions from different sources and
23 indicating that "the opinion of an examining physician is entitled to greater weight than that
24 of a non-examining physician"); Bain v. Astrue, 319 Fed.Appx. 543, 546 (9th Cir.
25 2009)("Evidence from state agency consultant physicians must be treated as 'expert opinion
26 evidence;' thus, the ALJ 'may not ignore these opinions and must explain the weight given
27 to these opinions in their decisions'") (quoting SSR 96-6p). Additionally, the justification for
28 the rejection that was given by the ALJ was not supported by substantial evidence. Instead,

the ALJ gave reduced weight because it was inconsistent with Plaintiff's poor effort during the examination as well as Plaintiff's general lack of mental health treatment and unremarkable mental status examinations during routine office visits. (Tr. at 33.) The focus on Plaintiff's poor effort during the examination ignored evidence to the contrary. An ALJ is not permitted to rely on evidence supporting her conclusions while ignoring evidence contrary to those conclusions. See Maydanis v. Colvin, 119 F.Supp.3d 969, 976 (D. Ariz. 2015); Provencio v. Astrue, 2012 U.S. Dist. LEXIS 85294, at *48 (D. Ariz., June 20, 2012) (finding "[i]t was improper for the ALJ to selectively reference plaintiff's treatment records to support her conclusion, while ignoring other treatment records contradicting that conclusion"). Moreover, the lack of formal mental health treatment cannot serve as evidence that mental health issues are not disabling. See Rivera v. Colvin, 2013 U.S. Dist. LEXIS 161035, *9-10 (D. Or., Nov. 12, 2013).

Therefore, in light of the fact that the Court finds that the ALJ failed to provide specific, legitimate reasons based on substantial evidence in the record for giving reduced weight to Dr. Potter's opinion, the Court will order that the decision of the ALJ be vacated and the case be remanded.

"[R]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009)). "[T]he proper course, except in rare circumstances, is remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam). The Ninth Circuit has held that when "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "to the Secretary for proper consideration of step three equivalence").

\\\
\\\

## V. CONCLUSION

For the reasons discussed in this Order, the Commissioner's decision will be vacated and this matter will be remanded for further administrative proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth in this Order;

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 24th day of March, 2017.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge